David A. Bledsoe, OSB No. 851548
DBledsoe@perkinscoie.com
Joanna T. Perini-Abbott, OSB No. 141394
JPeriniAbbott@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

Attorneys for Plaintiff
Portland General Electric Company

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| Portland General Electric Company,<br><br>              Plaintiff<br><br>      v.<br><br>Abeinsa EPC LLC, Abener Construction Services, LLC (formerly known as Abener Engineering and Construction Services, LLC), Teyma Construction USA LLC, and Abeinsa Abener Teyma General Partnership<br><br>              Defendants. | Case No.<br><br>COMPLAINT<br><br>By Plaintiff Portland General Electric Company<br>Pursuant to Fed. R. Civ. P. 7 |

Portland General Electric Company ("PGE" or "Owner") alleges as follows:

1-   COMPLAINT

## PARTIES

1.      PGE is a corporation incorporated under the laws of the State of Oregon, with its principal place of business in Portland, Oregon.

2.      Abeinsa EPC LLC is a Delaware limited liability company whose principal place of business is in Arizona.  Abeinsa EPC LLC is wholly owned by Abeinsa LLC.  No member or owner of Abeinsa EPC LLC is a citizen of Oregon.  Abeinsa LLC is wholly owned by Abengoa US Operations, LLC.  No member or owner of Abeinsa, LLC is a citizen of Oregon.  Abengoa US Operations, LLC is wholly owned by Abengoa US, LLC.  No member or owner of Abengoa US Operations, LLC is a citizen of Oregon.  Abengoa US, LLC is jointly owned by Abengoa Bioenergy Holdco, Inc.; Abengoa Solar Holdings Inc.; Abengoa Water Holding USA, Inc.; Abener Energia, S.A.; Abacus Project Management, Inc.; and Abeinsa Holding, Inc.  No member or owner of Abengoa US, LLC is a citizen of Oregon.

3.      Abener Construction Services, LLC (formerly known as Abener Engineering and Construction Services, LLC) is a Delaware limited liability company whose principal place of business is in Missouri.  Abener Construction Services, LLC is wholly owned by Abeinsa Business Development, LLC.  No member or owner of Abener Construction Services, LLC is a citizen of Oregon.  Abeinsa Business Development, LLC is wholly owned by Abeinsa, LLC.  No member or owner of Abeinsa Business Development, LLC is a citizen of Oregon.  Abeinsa LLC's corporate ownership structure is discussed in paragraph 2.

4.      Teyma Construction USA LLC is a Delaware limited liability company whose principal place of business is in Arizona.  Teyma Construction USA, LLC is wholly owned by Abeinsa, LLC.  Abeinsa LLC's corporate ownership structure is discussed in paragraph 2.

5.      Abeinsa Abener Teyma General Partnership is a Delaware general partnership whose principal place of business is in Arizona.  Abener Construction Services, LLC and Teyma Construction USA, LLC each own 49.5% of Abeinsa Abener Teyma General Partnership.

2-   COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Abeinsa EPC, LLC owns a 1% interest in the Abeinsa Abener Teyma General Partnership. The corporate ownership structure of Abeinsa EPC LLC is discussed in paragraph 2. The corporate ownership structure of Abener Construction Services LLC is discussed in paragraph 3. The corporate ownership structure of Teyma Construction USA LLC is discussed in paragraph 4. No partner of Abeinsa Abener Teyma General Partnership is a citizen of Oregon.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction of the subject matter of this claim pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). As outlined in paragraphs 1-5, no defendant is a citizen of Oregon and therefore complete diversity exists among the parties. The amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## GENERAL ALLEGATIONS

### PGE and the Abeinsa Companies Enter into the EPC Contract

8.      In 2011, PGE began a request for proposals ("RFP") process to solicit proposals for a baseload resource, as well as for a capacity resource. Twelve proposals were submitted to PGE.

9.      Abeinsa EPC LLC; Abener Construction Services, LLC (formerly known as Engineering and Construction Services, LLC); Teyma Construction USA, LLC; and Abeinsa Abener Teyma General Partnership (collectively, the "Abeinsa Companies," "Abeinsa," or "Contractor") were selected as the EPC contractor of the Carty Project through a competitive proposal process. The terms and conditions of the EPC Contract are attached as Exhibit 1.

10.      The Abeinsa Companies and PGE entered into a Turnkey Engineering, Procurement & Construction Agreement for Carty Generating Station between PGE and the Abeinsa Companies ("EPC Contract" or "Construction Contract") on or about June 3, 2013.

3-  COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

11.    The preamble to the EPC Contract defines Abeinsa EPC LLC; Abener

Engineering and Construction Services, LLC; Teyma Construction USA, LLC; and Abeinsa

Abener Teyma General Partnership as "collectively, and jointly and severally," "Contractor.'"

12.    Article 1, the definitions section of the EPC Contract, defines "Contractor" to

mean "each of the entities named in the preamble of this Agreement, or their respective

successors, in each case, jointly and severally."

13.    Article 1 of the EPC Contract defines "Turnkey" to mean "the complete and total

performance by Contractor of all of the Work to complete the Project Assets and all of its other

obligations under this Agreement for the amounts expressly provided for in this Agreement and

in accordance with Section 3.1."

14.    Article 3.1 of the EPC Contract ("Article 3.1") provides in part that Contractor

accepts to be engaged to perform the Work and to supply the Project Assets on a Turnkey basis

and in accordance with the EPC Contract and Owner is relying upon the expertise of Contractor

to furnish completed Project Assets in accordance with the terms of this Agreement.  Also, it

provides that Contractor acknowledges Owner's reliance upon the expertise of Contractor as set

forth in Section 3.1 of the Construction Contract.  Also, it provides that EPC is a Turnkey

contract and Contractor's obligation is to provide Owner with fully operational Project Assets,

completed in accordance with the terms of this Agreement; provided, however, that Owner shall

be responsible, with assistance from Contractor, for performing the items listed in Section 3.8.

15.    Article 3.3 provides in part that Owner will not be responsible for and will not

have control over or charge of construction means, methods, techniques, sequences or

procedures, or for safety precautions and programs in connection with the Work, and Owner will

not be responsible for Contractor's failure to carry out the Work in accordance with this

Agreement.  Also, it provides that Owner will not be responsible for or have control or charge

over the acts or omissions of Contractor, any Subcontractor, or any of their agents or employees,

4-    COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

and no inspection, or failure to inspect, by Owner shall be a waiver of Contractor's obligations, or be construed as approval; or acceptance of the Work or any part thereof.

16.    Article 3.6 provides in part that by accepting the Work performed and Equipment installed by Contractor at the Job Sites, Owner assumes no responsibility for injury or claims resulting from (a) failure of such Work or Equipment to comply with applicable Laws or Government Approvals as applicable to the performance of the Work, or (b) Defects or Deficiencies.  Also, it provides that Contractor's performance of the Work shall include the provision of all necessary temporary and permanent safety devices required by applicable federal, state and local authorities (including the Occupational Safety and Health Administration) and applicable Law or Government Approvals in effect at the time the Work was performed.

17.    Article 3.9 provides in part that except as set forth in Section 3.8 as responsibilities of Owner or otherwise specifically set forth in the EPC Contract, all responsibilities and obligations for performance of the Work are responsibilities and obligations of Contractor.

18.    Article 3.9.1 provides in part that Contractor shall prosecute the Work continuously and diligently in accordance with the Project Schedule, using only qualified and competent personnel and Subcontractors, and complete the Work in a manner that meets Project Standards and in accordance with the provisions of this Agreement.

19.    Article 3.9.3 provides in part that Contractor shall perform the Work, including designing, engineering, procuring, construction, Start-up, commissioning, and performance testing of the Facility, in accordance with Good Utility Practices, all Laws and Government Approvals (as applicable to the performance of the Work), and the Quality Control and Inspection Program provided for in Article 8.

20.    Article 3.9.10 provides in part that Contractor shall promptly provide any data that is deliverable under the EPC Contract in a form reasonably specified by Owner.

5-   COMPLAINT

21.     Article 3.9.18 provides in part that Owner shall not be responsible, by reason of review or failure to review of the design of the Transmission Facilities, for strength, details of design, adequacy or capacity of the Transmission Facilities or any part thereof, and effect Interconnection by interconnecting and synchronizing the Facility with the Electric Grid in accordance with this Agreement.

22.     Article 3.9.27 provides in part that Contractor shall provide proper protection from damage or loss to the Project Assets, the Job Sites, Additional Site Areas, materials, Construction-Related Equipment/Materials and tools during its performance of the Work.

23.     Article 3.9.34 provides in part that Contractor shall at its sole cost and expense, store all material and supplies, the Equipment, and all Construction-Related Equipment/Materials, as specified in this Agreement or, where not specified, in such a manner as is consistent with Good Utility Practice and so as to facilitate prompt inspection by Owner; and confine the storage of the foregoing to locations, and in a manner, specified in this Agreement and in accordance with technical specifications, manufacturer's instructions, and all applicable ordinances, regulations, or Laws.

24.     Article 3.9.35 provides in part that Contractor shall maintain at the Facility Site an orderly and adequate file of up-to-date copies of all contract documents and contract implementation documents including submittals and specifications, manufacturer's prints and specifications, field mark-up submittals, field installation notes, and other contract documents and supplementary data.

25.     Article 3.9.39 provides in part that Contractor shall maintain fiscal records, books and accounts pertaining to the Project in accordance with generally accepted accounting principles, consistently applied, and provide to Owner (as a matter of Final Completion) the project costs associated with a set of project property accounts supplied by Owner to Contractor as required in Exhibit "V".

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

26.     Article 7.1 provides that as full compensation and consideration for the full and complete performance of all of the Work and all of Contractor's other obligations under this Agreement and all costs in connection therewith, PGE shall pay to the Abeinsa Companies $364,029,449.  This compensation was adjusted subsequently.

27.     Article 7.10.2 provides in part that if at any time during the progress of the Work Contractor incurs any indebtedness for labor, equipment, materials, or apparatus, which indebtedness has become a lien upon the Work or any part thereof, or any equipment, materials, or apparatus, Contractor shall immediately, upon request by Owner, pay such indebtedness or cause such lien to be released and discharged by giving a bond or otherwise at Contractor's expense; and, upon any failure so to do, Owner may in its discretion (a) withhold any money due Contractor until such indebtedness is paid, or (b) apply such money toward the discharge thereof, or (c) declare this Agreement to be terminated, take possession and control of the Work, accept such portion of the equipment, apparatus, and materials covered by this Agreement as in the opinion of Owner may be used on the Work, and complete the Work or cause the same to be completed according to the Submittals and Specifications, all at Contractor's expense.

28.     Article 7.17 provides in part that Contractor shall use the sums paid to it pursuant to this Article 7 solely for the purpose of paying for or reimbursing itself for performance of the Work and for designing, furnishing, equipping, testing and commissioning the Project Assets in accordance with the Work Scope.  No provision hereof shall be construed; however, to require Owner to see to the proper disposition or application of the monies so paid to Contractor.

29.     Article 7.19 provides in part that Contractor shall, at its expense, keep and maintain such records and accounts in connection with the performance of the EPC Contract as will permit Contractor to furnish to Owner records (excluding Contractor's tax returns) as required to verify costs incurred of the various contract price(s) for performance of work under the EPC Contract as such may be required by Owner for making payment in the event of

7-   COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

termination and for public record requirements under applicable Law, for three (3) years after Final Completion; provided, however, that Contractor shall not be required to or provide access to those of its costs expressed as fixed rates, a lump sum, or of costs which are expressed in terms of percentages of such costs.

30.    Article 8.1 provides in part that Contractor shall perform all quality control and inspection activities related to the Work as required by all Government Authorities and/or Contractor's Quality Control and Inspection Program, as defined in the EPC Contract; Contractor may not rely upon Owner or any other individual or Government Authority to provide such services; Contractor shall inspect and test the Work, including all design, installation, engineering, materials, equipment, tools and supplies performed or provided; and, at all times during the performance of the Work, Contractor shall correct all Defects or Deficiencies in a reasonable time.  Also, it provides that Contractor shall take reasonable steps to keep Owner apprised of Defects or Deficiencies and of its correction or efforts to correct such Defects or Deficiencies.

31.    Article 8.3.1 provides in part that neither the failure to make any inspection or test nor to discover defective design, workmanship, materials, or equipment, nor acceptance of or payment to Contractor shall relieve Contractor from its obligation to do and complete the Work in accordance with the plans, Submittals and Specifications, and conditions of the EPC Contract.

32.    Article 8.3.2 provides in part that Contractor shall carry on the Work at its own risk until the Substantial Completion Date, and shall, in the event of any accident, destruction, or injury to the Work, including any materials, equipment, or apparatus provided therefor, before the Substantial Completion Date, (and except to the extent of any negligence of Owner or any Person for which Owner is responsible), promptly repair or replace the same at its own expense.

33.    Article 8.3.3 provides in part that with respect to any Work containing Defects or Deficiencies, if Contractor fails to initiate correction of such Defects or Deficiencies, or to have

8-    COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

submitted to Owner a course of action for doing so that is acceptable to Owner (in its reasonable judgment) and to have diligently commenced implementation of such plan, within ten (10) Business Days of its having received Notice thereof from Owner, Owner may, without prejudice to any other remedy Owner may have, correct such defective Work.  Owner's correction of such defective Work will not relieve Contractor of its obligations under the EPC Contract.  All reasonable costs and expenses related to such actions of Owner will be for the account of Contractor, and Contractor will promptly reimburse such amounts to Owner, or Owner may set such costs off as against any amount due from Owner to Contractor under the EPC Contract.

34.     Article 8.5 provides in part that if Owner shall waive or fail to exercise its right to inspect and witness any test as herein provided, it shall in no way relieve Contractor of full liability for the quality, character, proper operation and performance of the completed Work, and every part of it, nor shall it prejudice or affect any right of Owner set forth in this Agreement; nor shall any witness of any test or inspection by Owner or any failure to witness any test or inspect be construed as an approval or acceptance of the Work or any part thereof.

35.     Article 11.2 provides in part that Contractor shall prosecute the Work generally in accordance with or in advance of the Project Schedule which may only be revised by a Change Order issued per the specific provisions of the EPC Contract.

36.     Article 11.3.2 provides in part Contractor will submit a proposed Recovery Plan to Owner within five (5) Days of receiving Notification from Owner of its requirement and, within ten (10) Days of Contractor's initial submission of its proposed Recovery Plan, begin implementation of, and use its best efforts to adhere to, such Recovery Plan in order to regain compliance with the Project Schedule, including the utilization of additional shifts, additional manpower, overtime and re-sequencing of activities.

37.     Article 11.3.4 provides in part that if Contractor fails to submit a feasible proposed Recovery Plan or fails to implement the approved Recovery Plan or fails to use its best

9-   COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

efforts to adhere to such implemented Recovery Plan, then Owner may take such actions, including without limitation such actions as are permitted in accordance with Article 29 hereunder, as it may deem necessary or appropriate, including taking over and completing any Work items, in order to attempt to cause the Work to regain compliance with the Project Schedule.

38.    Article 19.1 provides in part that Contractor represents, covenants and warrants to Owner that the Equipment furnished under this Agreement will be of specified quality and new unless otherwise specified, and the Work will be free from Defects and Deficiencies.

39.    Article 24.4 provides in part that without prejudice to Section 14.2.5.2, but subject to Section 24.2, at all times until the end of the Day when Owner takes over the Project Assets pursuant to Section 17.4, Contractor shall bear the risk of loss and full responsibility for the cost of replacing or repairing damage to the Work, Equipment, and the Project Assets resulting from any cause whatsoever, and regardless of whether Owner has title thereto under this Agreement.

40.    Article 29.1 provides that except in the case of Sections 29.1.1, 29.1.2, 29.1.3, 29.1.4, 29.1.9, 29.1.10, 29.1.12, 29.1.13, 29.1.14, and 29.1.15, as to which no remediation opportunity for Contractor shall be allowed; then Owner may provide Notice to Contractor that Contractor is in default of the Construction Contract.

41.    Article 29.1 also provides in part that if (a) an event under Section 29.1.1, 29.1.2, 29.1.3, 29.1.4, 29.1.9, 29.1.10, 29.1.12, 29.1.13, 29.1.14, or 29.1.15 shall arise or exist, then a "Contractor Event of Default" will have occurred, and Owner may, by Notice to Contractor, terminate the Construction Contract.

42.    Article 29.1.1 provides in part that a Contractor Event of Default shall occur if Contractor or Guarantor becomes insolvent, or generally does not pay its debts as they become due, or admits in writing its inability to pay its debts, or makes an assignment for the benefit of creditors.

10-  COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

43.    Article 29.1.2 provides in part that a Contractor Event of Default shall occur if Contractor or Guarantor commences any case, proceeding or other action seeking reorganization, arrangement, adjustment, liquidation; dissolution, or composition of itself or its debts or assets, or adopts an arrangement with creditors, under any bankruptcy, moratorium, rearrangement, insolvency, reorganization or similar law of the United States or any state thereof for the relief of creditors or affecting the rights or remedies of creditors generally (collectively, "Debtor Relief Laws").

44.    Article 29.1.5 provides in part that a Contractor Event of Default shall occur if Contractor fails to make prompt payment for labor, equipment or materials in accordance with the terms of the applicable subcontract.

45.    Article 29.1.7 provides in part that a Contractor Event of Default shall occur if any representation or warranty made by Contractor was materially incorrect when made, or any representation or warranty made by Guarantor was materially incorrect when made, or any representation or warranty made by Guarantor was materially incorrect when made, or any such representation or warranty of Contractor or Guarantor becomes materially incorrect and thereof it reasonably could be expected that Contractor or Guarantor will be unable to observe and perform its material obligations under the Construction Contract or under the Guaranty.

46.    Article 29.1.12 provides in part that a Contractor Event of Default shall occur if Contractor Abandons the Work (except due to a suspension of the Work permitted under the EPC Contract) and Contractor fails to recommence construction activities at the Job Site(s) within five (5) Days after receipt of Notice from Owner regarding the same.

47.    Article 29.1.14 provides in part that a Contractor Event of Default shall occur if Contractor fails to adhere to the Project Schedule for reasons not otherwise excused under the terms of this Agreement, and either (a) Owner has not received a Recovery Plan from Contractor which Owner, exercising reasonable judgment, believes will result in the criteria for Substantial

11-  COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Completion being achieved before Contractor's liability for Substantial Completion Liquidated Damages will have reached its cap as described in Section 20.7.1, or (b) having received a Recovery Plan from Contractor (that was reasonably acceptable to Owner), Contractor fails to use its reasonable commercial efforts to adhere to such Recovery Plan.

48.     Article 29.2.2 provides in part that in the event of a default by Contractor under Section 29.1 of the EPC Contract, Contractor, upon request from Owner, must withdraw from the site and give Owner possession of all designs, materials, equipment, tools, purchase orders, correspondence, schedules, Submittals and Specifications (defined in the EPC), and facilities of Contractor on the job site or which have been prepared in connection with the work.

49.     Article 29.3.1 provides in part that in the event of a default by Contractor under Section 29.1 of the EPC Contract, in addition to other amounts payable pursuant to the EPC Contract, Contractor shall be liable to Owner for any costs in excess of the Contract Price incurred by Owner or any party acting on Owner's behalf in completing the Work or having the Work completed.

50.     Article 29.3.3 provides in part that in the event of a default by Contractor under Section 29.1 of the EPC Contract, in addition to other amounts payable pursuant to the EPC Contract, upon completion of the Work by Owner or third parties, the total cost of the Work shall be determined, and Owner shall Notify Contractor of the amount, if any, that Contractor shall pay Owner or Owner shall pay Contractor.

51.     Article 29.3.4 provides in part that in the event of a default by Contractor under Section 29.1 of the EPC Contract, in addition to other amounts payable pursuant to the EPC Contract, in addition to all costs incurred by Owner or third parties in completing the Work, Contractor shall promptly reimburse Owner in an amount equal to Owner's costs, demonstrated in writing to the reasonable satisfaction of Contractor, for all additional internal expenses

12-  COMPLAINT

62187-0016/131181074.3

incurred by Owner and for all additional damages suffered by Owner, in each case as a result of Contractor's default.

52.    Article 36.2 provides in part that Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work. Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to:  (i) all employees engaged in connection with the Work and all other Persons who may be affected thereby; (ii) all the Work and the Equipment and all materials to be incorporated therein, whether in storage on or off the Job Sites, under the care, custody or control of Contractor or any of its Subcontractors; and (iii) other property at the Job Sites or Additional Site Areas or adjacent thereto.

53.    Article 40.13 provides in part that unless expressly provided otherwise in this Agreement, this Agreement is for the exclusive benefit of the Parties and for any Person or entity who purchases, leases, or takes a security interest in the Project Assets, or any other Person to the extent expressly provided in this Agreement, and then only to the extent provided by the terms herein and is not for the benefit of any other third party.

54.    Article 40.17 provides in part that in any litigation arising out of the EPC Contract, the prevailing Party shall be entitled to recover from the other Party all expenses which the prevailing Party may reasonably incur in taking such action, including, but not limited to, attorney's fees at trial and on any appeal.

55.    Article 40.18 provides in part that the EPC Contract shall be governed and interpreted in accordance with the substantive law of the State of Oregon, excluding any conflict of law principles; the Parties irrevocably consent to the exclusive jurisdiction of any U.S. federal court with jurisdiction over Oregon; the Parties waive any objection to the venue of any such court; and the Parties waive any right they may have to a jury trial in connection with any action arising out of or related in any way to the EPC Contract.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

62187-0016/131181074.3

**Abengoa's 5bis Filing**

56.     On November 25, 2015, Abengoa, S.A. ("Abengoa" or "Guarantor"), a company affiliated with the Abeinsa Companies and the guarantor under a guaranty agreement with PGE, made a filing with the Commercial Court No. 2 of Seville under Article 5bis of Spanish law 22/2003 of July 9, 2009 ("Article 5bis").

57.     An Article 5bis filing allows a company in debt a three-month grace period, which can be extended to four months, during which the debtor company may negotiate with creditors to try to resolve its financial difficulties.

58.     A debtor company is entitled to submit an Article 5bis filing only if it is currently in a period of financial difficulty -- current insolvency or inability to pay obligations regularly as they come due -- or risks insolvency in the near future.

59.     If, following the three- or four-month period following the Article 5bis filing, the debtor company is insolvent, it must file a request for insolvency ("Solicitud de Concurso").

60.     During the period following the 5bis filing, many limits have been placed on the creditors of the debtor company.  Also, bankruptcy filings by Abengoa and the Abeinsa Companies show that they have long been insolvent.

**The Two Interim Funding Agreements**

61.     In November 2015 the Abeinsa Companies requested that PGE advance payments relating to the EPC Contract that were not yet due under the EPC Contract.

62.     PGE agreed to do so subject to certain conditions by means of a letter agreement dated November 28, 2015 ("11-28-15 Letter Agreement").  The 11-28-15 Letter Agreement is attached as Exhibit 2.

63.     Under the 11-28-15 Letter Agreement, PGE agreed subject to certain conditions to advance $3,402,108 in funds to pay subcontractors to whom the Abeinsa Companies owed money.

64.     The Abeinsa Companies, like PGE, signed the 11-28-15 Letter Agreement.

14-  COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

65.    The Abeinsa Companies then requested that PGE advance further payments relating to the EPC Contract which were not yet due under either the EPC Contract or the 11-28-15 Letter Agreement.  PGE made payment under the 11-28-15 Letter Agreement of $3,521,455 and under the 12-5-15 Letter Agreement of $1,883,992.

66.    PGE and the Abeinsa Companies, as well as the Sureties, entered into another letter agreement, this one dated December 5, 2015 ("12-5-15 Letter Agreement"), under which PGE agreed subject to certain conditions to advance an additional $1,865,367.  The 12-5-15 Letter Agreement is attached as Exhibit 3.

67.    The Abeinsa Companies, like PGE and the Sureties, signed this writing, too.

### The Meeting of PGE, the Abeinsa Companies and the Sureties on December 14, 2015

68.    On December 14, 2015, representatives of the Sureties (Sam Barker (senior surety counsel for international claims for Liberty), Jamie Ziegler (vice president of international claims for Liberty), Mike Mason (senior claims counsel for Zurich), Jan Sokol (outside counsel for Sureties), and John Stewart (outside counsel for Sureties)); the Abeinsa Companies (Pelayo Dominguez Bohorquez (project director for the Abeinsa Companies), Pablo Schenone (U.S. and Canada chief operating officer and regional director for Abeinsa EPC), Maria Eliset Techera Vergara (legal counsel and insurance director of Abeinsa EPC), James Miner (in-house legal counsel for Abeinsa EPC), and Sebastian Felicetti (chief financial officer for Abeinsa EPC)); and PGE (Maria Pope (senior vice president of PGE), Jaisen Mody (project manager for the Carty Project for PGE), Brett Greene (director of treasury for PGE), Nora Arkonovich (assistant general counsel for PGE), Stephen Redshaw (associate general counsel for PGE), Graehm Wallace (outside counsel for PGE), and Al Smith (outside counsel for PGE)) held an in-person meeting ("12-14-15 Meeting").

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

62187-0016/131181074.3

69.     At the 12-14-15 Meeting, Maria Eliset Techera Vergara stated that the workers at the Carty Project site had been ordered not to show up for work because there was no money to pay any of the subcontractors or vendors.

70.     The Abeinsa Companies did not have any of their non-management employees or subcontractors' non-management employees at work on December 14 or for any of the remainder of the week of December 14-18, 2015.

71.     During the meeting, Jim Miner, a lawyer for the Abeinsa Companies, stated that he would make four points that he was authorized by the Abeinsa Companies to make on their behalf.

72.     First, Mr. Miner said that the Abeinsa Companies did not have the financial ability to continue work on the Carty Project unless the Abeinsa Companies received additional outside financial assistance and, because of that, work on the Carty Project had come to a full stop.  Mr. Miner emphasized that the Abeinsa Companies needed financial help.

73.     Second, Mr. Miner said the Abeinsa Companies wanted to aggressively pursue the possibility of receiving financial assistance from the Sureties, but they had been told by the Sureties that it would take several weeks before the Sureties could agree to any such funding, even if one were to assume the Sureties would ever agree to provide Abeinsa any funding.

74.     Third, Mr. Miner said the Abeinsa Companies would provide PGE unfettered access to all Carty Project records, including all financial information related to payments to subcontractors and vendors.

75.     Fourth, Mr. Miner said the Abeinsa Companies needed PGE's immediate financial assistance or it could not proceed with the Carty Project, because Abeinsa had no other sources available for funding in the immediate future.  He also said that although the Abeinsa Companies had hoped to have access to funding from Abengoa, the Abeinsa Companies'

16-  COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

affiliated company in Spain, Abengoa had said any such renewed funding from Spain would not be forthcoming in the near term.

76.     Sebastian Felicetti said, in response to questions from Steve Redshaw and others, that it would take much more money to complete the Carty Project than the payments that would become due for payment by PGE under the EPC Agreement.  Mr. Felicetti said that if the Abeinsa Companies completed the construction of the Carty Project, the Abeinsa Companies would end up with a loss of approximately $75 million.

77.     Mr. Felicetti said that the Abeinsa Companies calculated that it would cost a total of $425 million to get the Carty Project complete by May 30, 2016, including costs paid and incurred to date as well as the costs anticipated to complete the Carty Project.

78.     In response to further questions about past due invoices, Mr. Felicetti explained that there was currently approximately $7 million due and unpaid as of that day (December 14, 2015), but that amount would increase to $12 million by the end of the following day (December 15, 2015) because there was another $5 million due and owing to vendors by the end of December 15 and the Abeinsa Companies had no means to pay those invoices.

79.     Mr. Felicetti stated that the Abeinsa Companies had a total of $84 million of accounts payable with no ability to pay those amounts.  Of this $84 million, $15 million was owed to a bank on a line of credit; $31 million was owed to companies within the Abengoa family of entities; and $38 million was owed to non-Abengoa-affiliated parties.  This $38 million included the $12 million that would be past due and owing by the end of the day on December 15, 2015.  Mr. Felicetti said the remaining $26 million of the $38 million was incurred and was also owing, but was not yet due under the payment terms of various contracts.

80.     Representatives of PGE and the Abeinsa Companies discussed what kind of terms would need to be included in any potential future funding agreement between PGE and the Abeinsa Companies.

17-  COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

81. Jaisen Mody of PGE said that PGE was very dissatisfied with Abeinsa's recent progress on the Carty Project and Abeinsa's deteriorating and then absent workforce, and was concerned because Abengoa had filed a prebankruptcy notice in Spain.

82. Graehm Wallace said PGE needed the Abeinsa Companies to acknowledge default for PGE to agree to advance further funds. Mr. Wallace noted that the prior two interim financing agreements had done little more than keep the Carty Project marginally active and the Abeinsa Companies' immediate creditors at bay, but if PGE was to agree to another round of funding, PGE would need the ability to immediately move in a different direction if either funding from the Sureties failed to materialize or if the Abeinsa Companies continued their slow pace of work.

83. Maria Eliset Techera Vergara stated that the Abeinsa Companies could not agree to such a term without approval from higher up persons within the organization.

84. Ms. Techera Vergara stated that PGE needed the Abeinsa Companies' cooperation to be able to complete the Carty Project.

85. Pelayo Dominguez Bohorquez of the Abeinsa Companies said that if PGE would not provide additional interim funding to the Abeinsa Companies, then they would have no reason to cooperate with PGE in turning over information or otherwise allow the Carty Project to continue.

86. Mr. Stewart told the Abeinsa Companies that the Sureties would not even consider any financing of the Carty Project unless the Abeinsa Companies admitted in writing that they were already in default under the EPC Contract.

87. The representatives of the Abeinsa Companies at the 12-14-15 Meeting said they doubted they could do so, but would respond to this request by December 16, 2015.

88. On December 15, 2015, Pablo Schenone sent an email to Jaisen Mody of PGE and others, reiterating the Abeinsa Companies' request for acceleration of payment from PGE to

18- COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

the Abeinsa Companies so they could pay wages. Mr. Schenone wrote, "As commented yesterday, we need this payment to be done. Situation with Union labor payment can't be h[e]ld further. Please confirm transfer is going to happen today."

89.     Later that day, Mr. Schenone emailed to PGE, "Thanks for your prompt response. Bel[]ow answers in red. The monies really need[] to be at the bank today to provide the checks to the people tomorrow."

90.     On December 16, 2015, Maria Eliset Techera Vergara wrote an email to various persons, including PGE representatives. She concluded by saying that "A new agreement needs to be developed in the next couple of days to avoid serious consequences to the project."

**PGE's Termination of the Abeinsa Companies on December 18, 2015**

91.     PGE had notified the Abeinsa Companies and the Sureties on November 27, 2015 that PGE was considering declaring a Contractor Default.

92.     PGE had met with the Abeinsa Companies and the Sureties by telephone on November 30, 2015, and in person on December 14, 2015 to discuss matters relating to the Abeinsa Companies' performance.

93.     By December 18, 2015, the Abeinsa Companies had shown that they generally were not paying their debts as they became due.

94.     By December 18, 2015, the Abeinsa Companies had shown that they generally were insolvent.

95.     By December 18, 2015, the Abeinsa Companies had admitted in writing their inability to pay their debts.

96.     By December 18, 2015, Abengoa had, by submitting an Article 5bis filing, sought an arrangement or adjustment of itself or its debts or assets.

97.     By December 18, 2015, the Abeinsa Companies had incurred indebtedness to Apollo Sheet Metal, Inc. dba Apollo Mechanical Contractors which had become a lien upon the

19-  COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Carty Project in the amount of $399,820.95, recorded in the Morrow County real estate records. The Abeinsa Companies did not make payment to Apollo, did not cause the lien to be released, and still has not done so.

98.     On December 18, 2015, PGE wrote the Abeinsa Companies a letter (the "Termination Letter") declaring a Contractor Default and formally terminated the Abeinsa Companies from working on the EPC Contract.  The same day, PGE wrote to the Sureties to inform them, under Section 3.2 of the Performance Bond, that PGE had terminated the Abeinsa Companies.

99.     In the Termination Letter, PGE informed the Abeinsa Companies that the termination was for events or conditions of default under Articles 29.1.1, 29.1.2, 29.1.14, and 7.10.2 of the EPC Agreement.

100.     PGE sent a copy of the Termination Letter to the Sureties on December 18, 2015.

101.     PGE agreed to pay the balance of the contract price under the EPC Contract.  PGE met all the preconditions for the Sureties' obligations arising under Section 3 of the Performance Bond.

102.     Since PGE's termination of the Abeinsa Companies, PGE discovered numerous examples of defective work by the Abeinsa Companies.

103.     Most of the defective work that PGE discovered was latent defects.

104.     Much of the defective work presented severe safety hazards.

105.     For example, though the Abeinsa Companies indicated that the site-wide copper grounding grid necessary for safe grounding at the plant had been completely installed, in fact PGE discovered that sections of the grid for which the Abeinsa Companies had been paid had not been installed at all, or were installed in the wrong location, while other sections had been installed improperly and did not meet code requirements.

20-  COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

106.    Other examples of latent defects identified at the Carty Project site include construction debris left inside closed piping associated with the Boiler Feed Water Pump, material left behind in high voltage buses and improper installation and alignment (due to Abeinsa's faulty survey) of the Closed Cooling Water System.

107.    Some of the latent defects posed serious and potentially deadly safety hazards.

108.    PGE also discovered that the Abeinsa Companies failed to pay numerous subcontractors, which resulted in the subcontractors placing liens on the Carty Project and asserting claims against PGE in an amount of approximately $29.5 million.

**PGE Has Suffered Damages Due to the Abeinsa Companies' Breach of the EPC Contract**

109.    Since PGE terminated the Abeinsa Companies on December 18, 2015, PGE has to date incurred costs to correct and complete the work on the Carty Project that exceed the contract price under the EPC Contract, as modified, by approximately $160,000,000, which are recoverable under Article 29.3 of the EPC Agreement.  Much of this work was incurred in order to correct defective work performed under the Abeinsa Companies' management and to perform work that the Abeinsa Companies reported as performed, but was not, as well as completion of construction generally, and start-up and commissioning.  PGE expects to incur additional costs to complete the Carty Project.

110.    Because PGE became the manager of the Carty Project after the Abeinsa Companies' default and termination, PGE is entitled to a market rate management fee in the amount of approximately $24,000,000 for its management of the Carty Project after December 18, 2015.

111.    Because of the Abeinsa Companies' failure to pay contractors and vendors, PGE has incurred to date approximately $11,000,000 in damages to settle claims and remove liens on the Carty Project.  PGE expects to incur additional costs to settle claims and remove liens on the Carty Project.

21-  COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

112.    PGE has incurred to date approximately $3,000,000  in legal fees and costs that are recoverable under Article 40.17 of the EPC Contract, and expects to incur further legal expenses.

113.    Under Article 20.2 of the EPC Contract, PGE is entitled to recover substantial completion liquidated damages until the substantial completion of the Carty Project, up to a cap of 15% of the value of the EPC Contract.  PGE has incurred to date approximately $13,000,000 in such damages and expects to incur further such damages.

114.    Under Article 20.4 of the EPC Contract, PGE is entitled to recover performance liquidated damages in the event the performance guarantees are not met.  PGE reserves its right to seek recovery of performance liquidated damages and to recover damages due to delay of the work on the Carty Project.

115.    Under Article 19 of the EPC Contract, PGE is entitled to warranty costs for the Carty Project.  PGE expects to incur such damages.

116.    Under ORS 82.010, PGE is entitled to prejudgment interest in the amount of nine percent (9%) per annum, accruing from March 2, 2016, the date that PGE was able to quantify the amount of its damages resulting from the Abeinsa Companies' breach of the EPC Contract.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

117.    PGE realleges and incorporates herein by reference the allegations of Paragraph 1-116 above as though set forth in full.

118.    The EPC Contract is a valid and enforceable contract between PGE and the Abeinsa Companies.

119.    One or more of the Abeinsa Companies were in default under the EPC Contract and were properly terminated by PGE under Articles 29.1.1, 29.1.2, 29.1.14, and 7.10.2 of the EPC Contract.

22-  COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

62187-0016/131181074.3

120.    To date, PGE has suffered damages, including correction of defective work, completion of construction, start-up and commissioning costs of approximately $160 million, management fee damages of approximately $24 million, damages to settle claims and remove liens from contractors and vendors of approximately $11 million, recoverable legal expenses of approximately $3 million, substantial completion liquidated damages in the current amount of approximately $13 million, all due to the Abeinsa Companies' material breaches of the EPC Contract, for a total of approximately $211 million in incurred damages.  PGE is entitled to recover these damages and also prejudgment interest at the rate of 9% per annum.  PGE reserves its right to amend this Complaint to recover damages for defects not yet discovered or costs not yet incurred.

## SECOND CLAIM FOR RELIEF

### Declaratory Judgment

121.    PGE realleges and incorporates herein by reference the allegations of Paragraphs 1-121 above as though set forth in full.

122.    28 U.S.C. §2201 provides a remedy for declaratory judgment.

123.    One or more of the Abeinsa Companies will continue to cause damages to PGE, due to their material breaches of the EPC Contract, including damages in the forms of costs to correct and complete the work on the Carty Project; a 15% management fee for substantial completion of the Carty Project; claim settling and lien removal costs; recoverable legal fees; substantial completion liquidated damages; performance liquidated damages; warranty costs; plus prejudgment interest at the rate of 9% per annum.

124.    PGE is entitled to a declaratory judgment that the Abeinsa Companies must pay all of these future damages to PGE for the period through the end of the warranty period under the EPC Contract.

23-  COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## PRAYER FOR RELIEF

PGE prays for judgment and relief against the Abeinsa Companies for:

1.　　Breach of the EPC Contract, damages incurred as of the time of trial, which damages currently approximate $211 million;

2.　　Breach of the EPC Contract, a declaratory judgment that Abeinsa must pay all of PGE's damages for breach of the EPC Contract incurred after trial and through the warranty period for the Carty Project;

3.　　Prejudgment interest, at the statutory rate of 9% per annum running from March 2, 2015;

4.　　Attorney's fees, pursuant to Article 40.17 of the EPC Agreement;

5.　　Costs and disbursements incurred in this action; and

6.　　Such other relief as this Court may deem just and proper.


DATED:  October 21, 2016

**PERKINS COIE LLP**


By: _s/ David A. Bledsoe_
　　David A. Bledsoe, OSB No. 851548
　　DBledsoe@perkinscoie.com
　　Joanna T. Perini-Abbott, OSB No. 141394
　　JPeriniAbbott@perkinscoie.com
　　1120 N.W. Couch Street, 10th Floor
　　Portland, OR  97209-4128
　　Telephone:  503.727.2000
　　Facsimile:  503.727.2222

Attorneys for Plaintiff
Portland General Electric Company


24-  COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

JS 44 (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Portland General Electric Company

**(b)** County of Residence of First Listed Plaintiff    Multnomah, OR
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Perkins Coie, LLP
1120 N.W. Couch Street, 10th Floor Portland, OR 97209-4128
Telephone: 503.727.2000

## DEFENDANTS
Abeinsa EPC LLC, Abener Construction Services, LLC (formerly known as Abener Engineering and Construction Services, LLC), Teyma Construction USA LLC, and Abeinsa Abener Teyma General P

County of Residence of First Listed Defendant    Maricopa, AZ
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Nathan D. O'Malley (California Bar No. 212193)
1880 Century Park East, 12th Floor
Los Angeles, CA 90067

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
       Plaintiff

☐ 3  Federal Question
       *(U.S. Government Not a Party)*

☐ 2  U.S. Government
       Defendant

☒ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☒ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
      Proceeding

☐ 2 Removed from
      State Court

☐ 3 Remanded from
      Appellate Court

☐ 4 Reinstated or
      Reopened

☐ 5 Transferred from
      Another District
      *(specify)*

☐ 6 Multidistrict
      Litigation -
      Transfer

☐ 8 Multidistrict
      Litigation -
      Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fed. R. Civ. P. 7

Brief description of cause:
Breach of Turnkey Construction Contract

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
   UNDER RULE 23, F.R.Cv.P.

DEMAND $
211,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE    Hernández

DOCKET NUMBER    3:16-cv-00495-HZ

DATE
10/21/2016

SIGNATURE OF ATTORNEY OF RECORD
s/ David A. Bledsoe

FOR OFFICE USE ONLY

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   Nature of Suit.  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.